# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PHI HEALTH, LLC, )
)
      Plaintiff, )
)
      v. )     25 C 12406
)     Honorable Charles P. Kocoras
HEALTH CARE SERVICE CORP., a )
Mutual Legal Reserve Co. d/b/a BLUE )
CROSS BLUE SHIELD OF TEXAS, )
)
      Defendant. )

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Plaintiff PHI Health, LLC ("PHI"), an air ambulance service provider, brings this action against Defendant Health Care Service Corp. d/b/a Blue Cross Blue Shield of Texas ("BCBSTX") in an effort to enforce payment of Independent Dispute Resolution ("IDR") determinations issued under the No Surprises Act ("NSA"), 29 U.S.C. § 1185e. PHI purports to bring claims under the NSA, Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. PHI also brings a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 8115 ILCS 505/1 *et seq*. Before the Court is BCBSTX's motion to dismiss PHI's amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, BCBSTX's motion is granted.

## BACKGROUND

Congress enacted the NSA "to protect patients from surprise medical bills incurred when they receive emergency medical services from out-of-network healthcare providers." *Guardian Flight, LLC. v. Health Care Serv. Corp.*, 140 F.4th 271, 273 (5th Cir. 2025) (citing 42 U.S.C. §§ 300gg-111, 300gg-112). "Because the NSA shifts the cost of some out-of-network care away from patients, it created a system for health care providers and private insurers to determine fair cost sharing." *T.V. Seshan, M.D., P.C. v. Aetna, Inc.*, 2026 WL 867151, at *1 (S.D.N.Y. Mar. 30, 2026). After providing a qualified out-of-network service for an insured patient, the health care provider sends a bill for the cost of the medical service to the applicable insurer. The insurer responds with an initial payment or notice of denial of payment. *See* 42 U.S.C. § 300gg-131(b)(1)(C). The provider may then, within 30 days, initiate open negotiations to seek a more desirable cost-sharing arrangement for the service or item. *Id.* § 300gg-111(c)(1)(A). Where negotiations are unsuccessful after 30 days, either party may initiate the IDR process to resolve the dispute. *Id.* § 300gg-111(c)(1)(B). The IDR process is "'baseball-style' dispute resolution," wherein each party submits a payment offer with supporting information, and the "IDR entity" chooses between the two offers. *Guardian Flight*, 140 F.4th at 273; 42 U.S.C. § 300gg-111(c)(5)(A)–(B).

The IDR determination:

> (I)     *shall be binding* upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and

> (II)    *shall not be subject to judicial review*, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9.

42 U.S.C.A. § 300gg-111(c)(5)(E) (emphases added); 29 U.S.C. § 1185e(c)(5)(E). Payment "with respect to a qualified IDR item or service for which a determination is made . . . *shall* be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made." 42 U.S.C. § 300gg-111(c)(6) (emphasis added).

The only "judicial review" expressly authorized under the NSA is when a party seeks to *vacate* an arbitration award in one of four scenarios, none of which are applicable here. *See* 9 U.S.C. § 10(a)(1)–(4). The NSA empowers the Departments of Health and Human Services ("HHS"), Labor, and Treasury with enforcement authority over the IDR process, including the ability to impose civil monetary penalties. *See*, *e.g.*, 42 U.S.C. § 300gg-22(b)(2), 42 U.S.C. § 300gg-134(b).

In this case, PHI won an IDR dispute against BCBSTX for providing emergency air ambulance services, and BCBSTX so far has refused to pay. PHI thus brought this action to enforce payment of the IDR award under either the NSA or the FAA. PHI also seeks a declaratory judgment that the IDR award is binding on BCBSTX, and BCBSTX's refusal to timely pay the IDR award is unlawful. PHI also brings a claim under the ICFA.

BCBSTX moves to dismiss PHI's amended complaint with prejudice under Rule 12(b)(6) for four reasons: (1) the NSA does not create a private right of action;

3

(2) PHI cannot "confirm" an IDR award under Section 9 of the FAA because Congress explicitly chose not to incorporate Section 9 into the NSA; (3) PHI cannot use the DJA to circumvent Congress's policy choice to restrict judicial review in favor of agency enforcement; and (4) PHI is not a consumer under the ICFA, the alleged conduct did not primarily take place in Illinois, and PHI failed to plead facts plausibly showing a violation of the ICFA.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). For these reasons, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th

4

734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

## DISCUSSION

The following discussion proceeds in four parts. First, the Court analyzes whether the NSA contains an implied right of action that would enable PHI to bring the present case and finds that it does not. Second, the Court determines that PHI similarly cannot obtain relief under Section 9 of the FAA, because the NSA forecloses that claim. Third, the Court finds that because there is no private right of action under the NSA, PHI cannot use the DJA to enforce IDR payment determinations. Lastly, the Court concludes that PHI fails to state an ICFA claim.

### I. Whether the NSA Creates a Private Right of Action

"[C]reating a cause of action is a legislative endeavor." *Egbert v. Boule*, 596 U.S. 482, 491 (2022). An implied right of action "is an increasingly rare creature, one that requires [courts] to infer that Congress created a private *right* and provided for a private *remedy*, all without taking the conventional route of doing so expressly." *Ohlendorf v. United Food & Com. Workers Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir. 2018) (emphasis in original), *cert. denied*, 586 U.S. 869 (2018). An implied right of action must be supported by statutory language. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

5

Although the Seventh Circuit[1] has not yet opined on this issue, nearly every court that has considered it—including the Fifth Circuit and multiple district courts across the country—has declined to find that the NSA creates either an express or implied private right of action. *See*, *e.g.*, *Guardian Flight*, 140 F.4th at 277 ("The NSA's structure conveys Congress's policy choice to enforce the statute through administrative penalties, not a private right of action."); *Axis Neuromonitoring, LLC v. Aetna Inc.*, 2026 WL 795260, at *5–*8 (D. Conn. Mar. 20, 2026) (collecting cases and finding no express or implied private right of action); *Mitchell F. Reiter MD PC v. Horizon Blue Cross Blue Shield of N.J.*, 2025 WL 3514300, at *5 (D.N.J. Dec. 8, 2025) (noting "substantial majority of federal court decisions across the country that have examined this issue and declined to recognize an implied right of action under the NSA") (cleaned up); *SpecialtyCare Inc. v. Aetna, Inc.*, 2025 WL 3719227, at *4 (M.D. Pa. Dec. 23, 2025) (no private right of action under NSA); *Interventional Pain Mgmt. v. Horizon Blue Cross Blue Shield of N.J.*, 2025 WL 3470569, at *8 (D.N.J. Dec. 3, 2025) (same); *Mod. Orthopaedics of N.J. v. Premera Blue Cross*, 2025 WL 3063648, at *14 (D.N.J. Nov. 3, 2025) (same); *T.V. Seshan*, 2025 WL 3496382, at *9 (same); *Worldwide*

---

[1] At least one court within this district has considered the issue and determined there is no private right of action under the NSA, and that Section 9 of the FAA does not apply. *See SpecialtyCare Inc., Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC v. Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois*, 2026 WL 1556442 (N.D. Ill. June 2, 2026) (Shah, J.); *SpecialtyCare Inc., Remote Neuromonitoring Physicians, PC v. Health Care Service Corporation d/b/a Blue Cross Blue Shield of New Mexico*, 2026 WL 1556244 (N.D. Ill. June 2, 2026) (Shah, J.); *SpecialtyCare, Inc. v. Health Care Service Corporation d/b/a Blue Cross Blue Shield of Texas*, 2026 WL 1556346 (June 2, 2026) (Shah, J.).

*Aircraft Servs., Inc. v. United Healthcare*, 2025 WL 3312169, at \*2 (M.D. Fla. Nov. 28, 2025) (same); *E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, 2025 WL 2371537, at \*17 (S.D.N.Y. Aug. 14, 2025) ("The statutory text [of the NSA] thus forecloses of a private right of action to enforce IDR determinations."); *Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of N.J.*, 790 F. Supp. 3d 129, 137 (E.D.N.Y. 2025) ("[B]y seeking confirmation here, Plaintiff asks the Court to impermissibly invent a cause of action to confirm an award under the NSA. It may not do so." (internal citations omitted)); *Freeman Pain Inst. v. Horizon Blue Cross Blue Shield of N.J.*, 2025 WL 3268289, \*6 (D.N.J. Nov. 24, 2025) ("Congress plainly knows how to provide a private right of action—and has done so in other statutes—but chose not to do so here. Not only does the statute fail to create a private right of action, the NSA clearly bars judicial review of IDR awards except as to the specific vacatur provisions borrowed from the FAA[.]"); *Advanced Vascular Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, 2026 WL 935833, at \*5 (E.D. Pa. Apr. 7, 2026) ("Congress made IDR determinations binding, limited judicial review to narrow circumstances, and created an administrative enforcement scheme. . . . [I]t did not create a private cause of action to compel payment of the IDR arbitration awards."); *SpecialtyCare Inc. v. Meritain Health, Inc.*, 2026 WL 353259, at \*3 (D. Del. Feb. 9, 2026), *report and recommendation adopted*, 2026 WL 745341 (D. Del. Mar. 17, 2026); *Neuroshield Network SE, LLC v. Phx. Adm'rs, LLC*, 2026 WL 863869, at \*6 (N.D. Ohio Mar. 30, 2026); *FHMC LLC v. Blue Cross & Blue Shield of Ariz., Inc.*, 2024 WL 1461989, at \*3

(D. Ariz. Apr. 4, 2024) (noting that "[a]n implied right of action is incongruous with such a detailed statutory scheme, in which judicial review is limited to specific instances").[2]

There are a few outliers, however. At least two district courts have concluded that the NSA does provide a private right of action: *Guardian Flight LLC v. Aetna Life Ins. Co. ("Aetna")*, 789 F. Supp. 3d 214 (D. Conn. 2025)[3], and *PHI Health, LLC v. Optimum Choice, Inc. d/b/a United Health Care*, 2026 WL 850453 (D. Md. Mar. 27, 2026) (Abelson, J.); *Specialtycare, Inc. v. Carefirst of Maryland, Inc.*, 2026 WL 1656946, at *2 (D. Md. June 9, 2026) (Abelson, J.). A district court in Connecticut concluded that while the NSA does not provide a private right of action, the court may nevertheless "confirm" IDR payment determinations because the NSA's bar on judicial review does not preclude confirmation of the IDR award. *Agag v. Cigna Health and*

---

[2] Some of these courts dismissed on jurisdictional grounds. *See*, *e.g.*, *Farkas*, 790 F. Supp. 3d at 137–38; *T.V. Seshan*, 2026 WL 3496382, at *7). Here, the parties framed all issues under Rule 12(b)(6), and the Court is dismissing for failure to state a claim. *See Advanced Monitoring Services Holdings, LLC v. Blue Cross Blue Shield of Okla.*, Case No. 25-CV-466-SHE-JFJ, Dkt. # 30, at 13 n.5 (N.D. Okla. May 14, 2026) (recommending dismissal under Rule 12(b)(6)); *Agag v. Cigna Health and Life Ins. Co.*, 2026 WL 1021213, at *6–7 (D. Conn. Apr. 15, 2026) (NSA provides federal question jurisdiction).

[3] The *Aetna* court noted in a subsequent order denying leave to file an interlocutory appeal that the Fifth Circuit relied in significant part on Section 300gg-22 in finding statutory evidence that Congress had opted to provide for a "general administrative remedy" rather than a private cause of action to enforce payment of IDR awards. As noted in the court's earlier order, the parties did not address Section 300gg-22 in their briefing and so the court declined to consider whether that provision provides a method of enforcing the substantive rule in the NSA's timing of payment provision. The court stated in the order denying permission to file an interlocutory appeal, "[i]t is possible I would have reached a different conclusion had that issue been briefed." Case No. 3:24-cv-00680, Dkt. # 295 (D. Conn. Sep. 30, 2025).

*Life Ins. Co.*, 2026 WL 1021213, at *11–12 (D. Conn. Apr. 15, 2026). This Court joins the majority and finds there is no implied right of action within the NSA.[4]

To be sure, by providing that IDR determinations are automatically "binding on the parties involved," 42 U.S.C. § 300gg-111(c)(5)(E), and naming the medical provider as the "beneficiary of the non-prevailing party's payment obligations," *T.V. Seshan*, 2025 WL 3496382, at *7, the NSA does use rights-creating language suggestive of an implied right of action. However, "the remainder of the statute, including its provision of alternative methods of enforcement, evinces Congressional intent *not* to create a judicial remedy." *Axis Neuromonitoring*, 2026 WL 795260, at *6 (emphasis in original).

There are two primary reasons for this. First, Congress expressly chose to permit petitions brought under Section 10 of the FAA, but not Section 9. And second, by providing for alternative enforcement mechanisms, Congress chose agency enforcement as the tool for enforcing IDR awards, not litigation. *See Agag*, 2026 WL 1021213, at *3 (describing administrative framework). Congress empowered the Department of Health and Human Services to assess penalties against insurers for failure to comply with the NSA. *See* 42 U.S.C. § 300gg-22(b)(2); 45 C.F.R. § 150.303. Under the enforcement provision, any health plan or health insurance issuer that fails

---

[4] The Court also disagrees with the approach taken in *Agag*. There, the court held the "focus on the private right of action question is misplaced" because a plaintiff seeking enforcement of an IDR award is not seeking to enforce substantive rights. *See Agag*, 2026 WL 1021213, at *9. The court analyzed the text of the statute and found that a judicial enforcement remedy was not precluded. *See id.* at *10–12.

to comply with an IDR determination is liable for up to $100 for each day of noncompliance. 42 U.S.C. § 300gg-22(b)(2)(C)(i). The regulations implementing the statute also describe the processes for investigating potential violations and assessing civil money penalties for failing to comply with the NSA. 45 C.F.R. §§ 150.303–150.345.

"Generally, '[t]he express provision of one method of enforcing a substantive rule,' such as through an agency proceeding, 'suggests that Congress intended to preclude others,' like a private cause of action." *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1112 (2d Cir. 2024) (quoting *Alexander*, 532 U.S. at 290); *see also Mid-Am. Nat'l Bank of Chi. v. First Sav. & Loan Ass'n of S. Holland*, 737 F.2d 638, 642 (7th Cir. 1984) ("It is manifest that the existence of supervisory and enforcement authority at the administrative level suggests that broad private remedies were not intended.") (citing *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 20 (1979)). PHI contends that failing to recognize a private right of action "would undermine the structure of the NSA and transform IDR determinations into worthless slips of paper." Dkt. # 32, at 15. But PHI's dissatisfaction with Congress's chosen administrative remedy "does not confer authority to overstep a clear statutory boundary." *Freeman Pain Inst.*, 2025 WL 3268289, at *7.

"[I]f (as here) the statute displays no intent to create a private remedy, 'courts may not create one, no matter how desirable that might be as a policy matter.'" *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 858 (7th Cir. 2017) (quoting

10

*Alexander*, 532 U.S. at 286–87). It is not the Court's "duty to be alert to provide such remedies as are necessary to make effective" Congress's purpose. *Id.* (cleaned up) (citation omitted). PHI's "remedy is with Congress, not [this court], to fix the statute if it thinks there is a problem." *Advanced Vascular Assocs. v. Horizon Blue Cross Blue Shield of New Jersey*, 2026 WL 935833, at *3 (E.D. Pa. Apr. 7, 2026). Count I of the amended complaint is dismissed with prejudice.

## II.   Confirmation Under Section 9 of the FAA

PHI cannot seek confirmation of an NSA IDR award under the FAA. Section 9 requires that there be an "agreement" by the parties that a judgment "shall be entered upon the award made pursuant to the arbitration . . . ." 9 U.S.C. § 9. The agreement must be in writing. *See* 9 U.S.C. § 2; *Advanced Vascular Assocs.*, 2026 WL 935833, at *2 ("The statute enforces agreements to arbitrate; it does not create them. And those agreements must be in writing. . . . Without a written agreement to arbitrate, Section 9 has no application."). PHI nevertheless argues an agreement exists, citing: (1) the Provider Claim Summary expressly extended an invitation to participate in the open negotiation process; (2) PHI's acceptance of that offer by initiating open negotiation; (3) BCBSTX's direction to PHI to initiate IDR once it determined negotiations were unsuccessful; (4) PHI's acceptance of that invitation by initiating IDR; and (5) BCBSTX's participation in the IDR through both first objecting to the process and then submitting a bid. *See* Dkt. # 32, at 21.

11

PHI further argues that "[i]f Congress truly did not intend for the IDR award to function as an arbitration award, the NSA would not provide for binding, expedited dispute resolution by a third-party neutral that can only be vacated by certain provisions in the FAA." Dkt. # 32, at 19. In PHI's view, the NSA's "IDR process *is* arbitration." Dkt. # 32, at 18 (emphasis in original). Courts have repeatedly rejected this argument. Congress did not incorporate Section 9 into the NSA, and "while there are superficial similarities between the IDR and arbitration," there are also fundamental differences between the two processes, and "they are premised on fundamentally different authorities." *Mod. Orthopaedics*, 2025 WL 3063648, at *5; *see also Freeman Pain Inst.*, 2025 WL 3268289, at *5–6 (explaining the "key differences [that] permeate the IDR and arbitration frameworks," and concluding "the very nature of the IDR process is too different from a traditional arbitration as contemplated by the FAA for this Court to find that Congress intended for the FAA to govern the IDR process. Absent a valid arbitration, this Court lacks the necessary jurisdiction to confirm an IDR award under the FAA.").

For example, at the most basic level, "to begin arbitration the parties must have an unambiguous agreement to arbitrate; conversely, an IDR is limited to parties that have no agreement whatsoever and have failed to find alternative way to resolve their dispute." *Mod. Orthopaedics*, 2025 WL 3063648, at *6 (comparing 9 U.S.C. § 2 with 42 U.S.C. § 300gg-111(b)(1)(B)). Here, the parties only engaged in the IDR process because a *statute*, not a written agreement to arbitrate, compelled participation in the

12

IDR process. *See Freeman Pain Inst.*, 2025 WL 3268289, at *5 (dismissing FAA Section 9 claim because "Plaintiff and Defendant have no contract or written arbitration agreement. Their participation in the IDR process was statutorily compelled, with no prior agreement to submit to arbitration . . . The lack of a written agreement between the parties to submit to arbitration removes the IDR process entirely from eligibility for confirmation under the FAA[.]"); *Farkas*, 790 F. Supp. 3d at 136 (noting that arbitration under the FAA assumes an agreement or contract to arbitrate, and the NSA's IDR is statutorily compelled).

PHI also contends that by making IDR awards statutorily "binding," Congress indicated that they are as enforceable in court as if they arose from arbitration agreements. The Court disagrees. "That IDR awards are 'binding' does not mean that Congress contemplated judicial review to confirm these awards." *T.V. Seshan*, 2026 WL 867151, at *5.

Additionally, the Court is not persuaded by PHI's argument that the NSA only constrains courts' right to set aside awards, rather than courts' ability to confirm or enforce awards. This "is a distinction without a difference. The term 'judicial review' is broad enough to include a court's order to enforce an IDR award." *Guardian Flight*, 140 F.4th at 275; *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (the FAA "provides for expedited judicial review to *confirm*, vacate, or modify arbitration awards.") (emphasis added)). The preclusion of "judicial review," as used in the NSA, necessarily encompasses preclusion of a judicial enforcement action akin to that

13

provided in Section 9 of the FAA. *See Reiter*, 2025 WL 3514300, at *4. Count II of the amended complaint is dismissed with prejudice.

### III. The Declaratory Judgment Act

Next, PHI seeks a declaration that the IDR award is binding on BCBSTX, and BCBSTX's refusal to timely pay the IDR award is unlawful. Federal courts are permitted to issue declaratory judgments only in cases of "actual controversy." 28 U.S.C. § 2201. Unfortunately for PHI, "[a] justiciable actual controversy exists only when a private right of action is available." *Mellott v. Sprague*, 334 F. Supp. 3d 916, 922–23 (C.D. Ill. 2017) (citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("the Declaratory Judgments Act is not an independent source of federal jurisdiction, the availability of such relief presupposes the existence of a judicially remedial right")); *see also Bartucci v. Wells Fargo Bank N.A.*, 2015 WL 6955482, at *3 (N.D. Ill. Nov. 10, 2015); *Villasenor v. Am. Signature, Inc.*, 2007 WL 2025739, at *6 (N.D. Ill. July 9, 2007) (collecting cases). As explained above, there is no private right of action under the NSA and therefore Count III is dismissed. *See*, *e.g.*, *E. Coast Advanced Plastic Surgery*, 2025 WL 2371537, at *18 (denying relief under the declaratory judgment act, holding that "to the extent ECAPS seeks a declaration under the NSA itself, ECAPS has not . . . shown that there is a private right of action under the NSA.").

## IV. The ICFA

This leaves PHI's state law claim for a violation of the ICFA.[5] In its ICFA claim, PHI alleges that BCBSTX engages in unfair business practices, including that BCBSX: (1) provides low initial payments to providers like PHI; (2) makes PHI and other providers jump through hoops to get paid; (3) improperly delays payment or ignores IDR awards altogether, and when awards are paid, they are paid late and do not include interest; and (4) has failed to implement compliance systems to meet its obligations. BCBSTX moves to dismiss this claim, arguing PHI lacks standing to assert the claim, there is an insufficient connection between the alleged conduct and Illinois, and PHI has not properly alleged the elements of a successful claim.

To prevail on a claim for violation of the ICFA, "a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). For an unfair conduct claim, which is what PHI alleges in this case, a plaintiff need only allege that (1) the practice offends public policy; (2) is

---

[5] PHI argues that if the Court were to dismiss its claims under the NSA, the Court should refrain from ruling on the ICFA claim and instead remand the matter to state court. BCBSTX, however, points out that even if the federal claims are dismissed, the Court retains diversity jurisdiction because both parties are completely diverse, and the amount in controversy exceeds $75,000. BCBSTX is correct.

15

immoral, unethical, oppressive, or unscrupulous, and (3) causes substantial injury to consumers. *Id.* at 647.

Before delving into the merits of PHI's ICFA claim, the Court must first determine whether PHI either meets the statutory definition of "consumer" or satisfies the consumer nexus test. *Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 738 (N.D. Ill. 2011). PHI does not claim to be a consumer as defined by the ICFA.[6] Instead, PHI argues it satisfies the consumer nexus test. "Illinois courts are skeptical of business-v.-business ICFA claims when neither party is actually a consumer in the transaction." *Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*, 887 F.3d 803, 823 (7th Cir. 2018); *see also JMR Sales, Inc. v. MMC Elecs. Am., Inc.*, 2002 WL 31269612, at *3 (N.D. Ill. Oct. 10, 2002) ("It is clear that the ICFA is primarily concerned with protecting consumers, not business entities.").

In general, "a non-consumer plaintiff must allege 'conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Roppo v. Travelers Co.*, 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015) (citation omitted). In other words, "[t]o implicate consumer protection concerns, there must be a connection between the alleged misconduct and the wider marketplace, as well as a connection between the requested relief and consumers generally." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1051 (N.D. Ill. 2017)

---

[6] The ICFA defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

16

(citing *Brody v. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 298 Ill. App. 3d 146, 159 (1998)). "Requiring a connection between the requested relief and *consumers* is thus important because it ensures that non-consumers do not expand the Consumer Fraud Act beyond its intended purpose." *Id.* (emphasis in original).

PHI argues it satisfies the consumer nexus test because it alleges that (1) its services require substantial investments in equipment, technology, personnel, and regulatory compliance; (2) BCBSTX is "engaged in widespread underpayment and delay and other abuses of the IDR process that impact PHI and other providers of emergency healthcare services;" and (3) BCBSTX's "delay and avoidance of payment undermines the NSA process and is antithetical to the rational and proper functioning of the U.S. Healthcare system." Dkt. # 32, at 22–23.

BCBSTX's scheme as alleged by PHI is not directed to the market generally. In *Beatty v. Accident Fund Gen. Ins. Co.*, a plastic surgeon contended that multiple insurers' scheme of failing to pay interest rates on late-paid and unpaid bills was directed to the market generally because it impacted "every patient and provider in the entire Illinois healthcare market[.]" 2018 WL 3219936, at *10 (S.D. Ill. July 2, 2018). The district court rejected that contention, explaining that "[w]hile the [insurer's] conduct may have repercussions for Illinois consumers," the conduct targeted medical providers only, not the market generally. *Id.* The same can be said for this case.

Because BCBSTX's practices were not directed to the market generally, the alleged conduct must "implicate consumer protection concerns." To establish an

17

implication of consumer protection concerns, PHI must have pleaded: (1) actions that establish a link between it and consumers; (2) BCBSTX's unfair practices concerned consumers other itself; and (3) "how the requested relief would serve the interest of consumers." *Walsh Chiropractic, Ltd. v. StrataCare, Inc.*, 752 F. Supp. 2d 896, 913 (S.D. Ill. 2010) (quoting *Brody*, 298 Ill. App. 3d at 160).

PHI says that BCBSTX's "conduct, directed to the healthcare market, threatens the ability of providers, including PHI, to fund substantial operation costs. This conduct, and the financial havoc wreaked by it, threatens the quality of service that PHI and others are able to provide to the public at large, which implicates consumer protection concerns." Dkt. # 32, at 23. Citing *Guardian Flight*, BCBSTX counters that "'[t]he NSA shields' consumers 'from liability for any out-of-network coverage costs,' so consumers 'have not suffered – and could not suffer – any concrete injury from [BCBSTX's] failure to cover medical bills that fall within the scope of the NSA.'" Dkt. # 24, at 13 (quoting *Guardian Flight*, 140 F.4th at 278).

"Passing on costs to customers is a recognized consumer protection concern." *Conn. Gen. Life Ins. Co. v. Sw. Surgery Ctr., LLC*, 349 F. Supp. 3d 718, 725 (N.D. Ill. 2018); *see also Beatty*, 2018 WL 3219936, at *11 (plaintiff doctor adequately alleged "implication of consumer protection concerns" against insurer by stating that insurer's unpaid interest charges may shift to the doctor's patients); *Walsh Chiropractic*, 752 F. Supp. 2d at 913 (holding that a consumer nexus is met where complaint alleged facts from which the court could infer that patients of medical providers may be subject to

18

fee increases as a result of the defendant's alleged fraud on the medical providers). At this stage, the Court is satisfied that PHI's allegations implicate consumer protection concerns.

The ICFA, however, has limited territorial reach. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 185 (2005). A plaintiff must allege "circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* at 187. There is "no single formula or bright-line test for determining whether a transaction occurs within [Illinois]." *Id.* Instead, courts consider factors such as where the company is located, where the alleged deception took place, the plaintiff's residence, and where the damage to the plaintiff occurred. *Id.* at 187–88.

PHI argues its amended complaint establishes a sufficient nexus to Illinois because it alleges that BCBSTX is organized under Illinois law and headquartered in Chicago, the non-payment of IDR awards takes place in Chicago, and BCBSTX "sells insurance/administrative services 'from within the state' and engages in trade/commerce as defined by the ICFA." Dkt. # 32, at 24. BCBSTX, in response, points out that PHI provides air ambulance services in Texas, not Illinois, BCBSTX issues and administers health plans in Texas, and BCBSTX communicates with providers like PHI from a Texas address.

PHI's allegations are insufficient. As an initial matter, "the administration of defendant's business in Illinois is insufficient to give a nonresident plaintiff a claim." *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 771–72 (N.D. Ill. 2021) (quoting

*Robinson v. DeVry Educ. Grp., Inc.*, 2018 WL 828050, at *4 (N.D. Ill. Feb. 12, 2018)). PHI asserts that the non-payment of IDR awards takes place in Chicago, but this claim is contradicted by PHI's own exhibits. The "Provider Claim Summary" and the letter advising PHI that it may avail itself of the IDR process, attached to the amended complaint as Exhibits A and B, were sent from a Texas address. Additionally, none of the services giving rise to the payment disputes between BCBSTX and PHI took place in Illinois. None of health plans covering PHI's services were administered to Illinois residents. PHI does not allege it dealt with any BCBSTX representatives in Illinois. And PHI did not suffer damages in Illinois.

The only reason Illinois is implicated is because BCBSTX is a division of a company headquartered in Illinois. "[W]hether a defendant's headquarters is located in Illinois is a factor to be considered by the Court, but is far from dispositive." *Van Tassel v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 782 (N.D. Ill. 2011). And PHI's claim that it "alleges a policy-drive, systemic business practice rather than one-off Texas field activity," Dkt. # 32, at 24, also does not help its case because "[t]he dissemination of a scheme to defraud from Illinois headquarters is not dispositive either." *Robinson*, 2018 WL 828050, at *4. Considering the totality of PHI's allegations, the Court cannot conclude that "the circumstances that relate to the disputed transaction occur[ed] primarily and substantially in Illinois." *Id*. at *3. Count IV is dismissed, without prejudice.

20

## **CONCLUSION**

For the foregoing reasons, BCBSTX's Motion to Dismiss [23] is granted. If PHI believes in good faith that it can amend its operative complaint to state a viable claim, it may do so by 7/14/2026. A telephonic status hearing is set for 7/21/2026 at 9:50 a.m.

It is so ordered.

Charles P. Kocoras
United States District Judge

Date: June 23, 2026

21